THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RENEE BRENNAN, Defendant-Appellant.
Third District   No. 3—83—0526

Opinion filed March 27, 1984.

Joseph A. Mueller, of White, Marsh & Mueller, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:
In accordance with section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.1), the circuit court of La Salle County held a hearing to determine whether the defendant, Renee Brennan, refused to submit to a breathalyzer test. The trial court found the defendant refused to submit to the test. The defendant appeals that finding. We reverse.

The issue on appeal is whether the State proved by a preponderance of the evidence that the defendant refused the breathalyzer test. It is important to note, at the outset, that there is little authority concerning when a refusal may occur and what conduct constitutes a refusal under section 11—501.1 of the Illinois Vehicle Code.

Section 11—501.1 sets out the procedures which must be followed by law enforcement officers when requesting a driver to submit to an intoxication test. The section also lists the penalties which may be imposed upon a driver for refusing, "upon the request of the officer," to

submit to a test. Logic, as well as the language of section 11—501.1, suggests that there cannot be a refusal to take a test unless the driver is asked to take the test. Therefore, we find that a refusal occurs only where, after a clear warning of the ramifications resulting from a refusal (see *People v. Malloy* (1980), 83 Ill. App. 3d 344), an officer explicitly asks a defendant whether he, or she, will take the test, and the defendant, by word, act or omission, clearly refuses to take the test.

In the instant case, the uncontroverted facts are as follows. The defendant was stopped by Officer Vagasky in the early morning hours of January 15, 1983. Officer Vagasky believed the defendant was intoxicated and asked her to take a breathalyzer test. The defendant agreed and rode with Officer Vagasky to a nearby police station. Once at the station, the defendant received permission to phone home. After the phone call, Officer Vagasky drove the defendant to the county jail in Ottawa, where she remained until a family member transported her home. The breathalyzer test was never administered to the defendant. The next day, the officer submitted an affidavit of the defendant's refusal to take the test.

At the hearing on the question of refusal, Officer Vagasky testified the defendant refused the test. The defendant, on the other hand, stated that she did not refuse the test. The defendant's testimony was unequivocal. In addition to the above facts, she related that after arriving at the station, she briefly spoke with her mother on the phone. A policewoman then took the phone in order to give the defendant's mother directions to the station. At that time, Officer Vagasky said he wouldn't wait and that her mother should pick her up at the Ottawa County jail. Following the phone call, the defendant did not have any further conversation with Officer Vagasky. She also testified that following the initial roadside request to take the test, no one again asked her to take the test and she never refused to take the test.

The State, based upon the testimony of Officer Vagasky, contends that the defendant attempted to delay the administration of the test and that the defendant conditioned her participation upon the occurrence of certain events, namely an opportunity to speak with her father. The State argues that this "conditional refusal" by the defendant should be construed as a refusal under the Vehicle Code. We need not decide whether a conditional refusal can be a refusal under the Code.

An examination of the record reveals that Officer Vagasky's testimony concerning the fact of any sort of refusal, conditional or otherwise, was directly contradictory and without credibility. At one point,

Officer Vagasky testified that "[the defendant] didn't know if she should or shouldn't [take the test] *** she was confused *** After a certain period of time we took it as a refusal ***." A few moments later, Officer Vagasky then testified, "She said she's not going to take it." Yet, later still, the State asked Officer Vagasky, "Did she ever say she wasn't going to [take the test]?" The officer replied, "Not directly, no." Yet, again, moments later he testified, "I said, do you want to take the test? She said no ***." In light of the oscillation in Officer Vagasky's testimony, we believe he did not have a clear recollection of his conversations with the defendant. At most, we can only infer that he based his conclusion of a refusal upon his silent and subjective interpretation of the defendant's confusion and request to speak with a family member.

As noted above, the fact of a refusal must be based upon an objective review of the officer's question and the defendant's response. In the instant case, the defendant rode with Officer Vagasky to the police station, in the first place, because she agreed to his roadside request that she take the test. We find no credible evidence that, once at the station, the defendant was ever offered the test or asked, for a second time, whether she would take the test. Consequently her statements and conduct at the station cannot be interpreted as a refusal. There cannot be a refusal if there was neither a proper request nor an opportunity to take the test.

Therefore, we hold that the trial court's finding of a refusal to take the breathalyzer test was against the manifest weight of the evidence. The State did not prove by a preponderance of the evidence that the defendant refused the administration of the test. The trial court is reversed.

Reversed.

BARRY and STOUDER, JJ., concur.