THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL ENGELBRECHT, Defendant-Appellant.

Second District   No. 2—90—1257

Opinion filed February 28, 1992.

Michael C. Downey, of Dixon, for appellant.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Paul Engelbrecht, appeals the denial of his petition to rescind the statutory summary suspension of his driver's license (Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1). Defendant argues that the trial court erred in granting a directed finding for the State where his evidence showed that the arresting officer did not accurately inform defendant of the consequences of a refusal to submit to a chemical test for blood or breath alcohol (see Ill. Rev. Stat. 1989, ch. 95½, pars. 6—208.1(a), 11—501.1(c)). We affirm in part, reverse in part and remand.

On May 25, 1990, defendant was arrested for driving under the influence of alcohol (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501). The arresting officer read or issued defendant the following warning:

"Subsequent to an arrest for violating section 11—501 of the Illinois Vehicle Code, or a similar provision of a local ordinance, you are hereby warned and notified that:

1. Refusal or failure to complete all chemical tests requested will result in suspension of your driving privileges for a minimum of 6 months.

2. If you submit to the chemical test(s) disclosing an alcohol concentration of 0.10 or more, your driving privileges will be suspended for a minimum of 3 months.

3. *If you refuse or fail to complete all chemical tests or if you submit to a test or tests disclosing an alcohol concentration of 0.10 or more* and have had a previous conviction or court assigned supervision for driving while under the influence of alcohol, other drug, or combination thereof within the last 5 years, in this or any other State, or received a driver's license suspension for refusing to submit to chemical testing following an arrest for driving under the influence of alcohol, other drug or combination thereof in Illinois since January 1, 1982, or a previous statutory summary suspension except in cases where you submitted to chemical testing resulting in an alcohol concentration of 0.10 or more and [*sic*] subsequently found not guilty; *your driving privileges will be suspended for a minimum of 12 months.*" (Emphasis added.)

Defendant refused to take the requested test. On June 8, 1990, the Secretary of State filed with the circuit court a confirmation that, pursuant to section 11—501.1 of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1), defendant's driving privileges would be suspended for a minimum of two years, effective July 10, 1990. This suspension was based on section 6—208.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 6—208.1), which provides, as relevant here:

"(a) Unless the statutory summary suspension has been rescinded, any person whose privilege to drive a motor vehicle on the public highways has been summarily suspended, pursuant to Section 11—501.1, shall not be eligible for restoration of the privilege until the expiration of:

* * *

3. Two years from the effective date of the statutory summary suspension for any person other than a first offender who refuses or fails to complete a test or tests to determine the alcohol or drug concentration pursuant to Section 11—501.1; or

4. One year from the effective date of the summary suspension imposed for any person other than a first offender following submission to a chemical test which disclosed an alcohol concentration of 0.10 or more pursuant to Section 11—501.1."

On August 28, 1990, defendant filed his petition to rescind the statutory suspension. Defendant, who was not a "first offender" within the meaning of the statute, challenged the suspension on the four grounds listed in section 2—118.1(b) of the Code (see Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)). The only relevant ground on appeal is his argument that the suspension was invalid because the arresting officer did not properly advise him that his privilege to operate a motor vehicle would be suspended if he refused to submit and complete the tests (see Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)(3)). Defendant argued specifically that the warning he received inaccurately stated that his refusal to take the test would result in the suspension of his license for a minimum of 12 months, whereas section 6—208.1 of the Illinois Vehicle Code, as applicable at all relevant times, actually provided for suspension for a minimum of two years. According to defendant, this inaccurate warning violated section 11—501.1(c) of the Code, which provides:

"A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as provided in Section 6—208.1 of this Code." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c).

The trial court granted the State a directed finding on the petition and denied defendant's motion to reconsider. The trial judge acknowledged that the warning issued to defendant was inaccurate, as it was based on the version of section 6—208.1 applicable prior to September 21, 1989, the effective date of section 2 of Public Act 86—929 (the amendment). Prior to the amendment, section 6—208.1 required (absent rescission of the summary suspension) a suspension of one year for "any person other than a first offender." (See Ill. Rev. Stat. 1987, ch. 95½, par. 6—208.1(a)(3).) Under section 6—208.1 before the amendment, both motorists who refused or failed to take the requested test and those who took and failed the test were subject to a minimum one-year suspension of driving privileges. Under section 2—608.1 as amended, those who refuse or fail to take the requested test face a minimum two-year suspension, twice that applicable to those who submit to the test and fail.

Although the trial judge recognized that the warning to defendant was inaccurate in that it tracked the outdated version of section 6—208.1, she concluded that defendant nonetheless had failed to prove that his license was improperly suspended. The judge reasoned that the warning informed defendant that his refusal to be tested would result in the suspension of his driving privileges for a minimum of 12 months and that this warning, even if not completely accurate, sufficiently informed defendant of the consequences of a refusal to take this test. The judge noted that the warning stated that a refusal would result in the suspension of defendant's driving privileges for a *minimum* of 12 months; the warning "did not just as a blanket say it will be *only* twelve months." (Emphasis added.) She concluded, therefore, that it would be "hypertechnical" here to require the arresting officer to have used the updated warning.

On appeal, defendant argues that this interpretation of the Code is erroneous. Defendant points out that section 11—501.1(c) of the Code requires that the arresting officer warn the motorist that refusal to submit to testing "will result in the statutory summary suspension of [the driver's license] *as provided in Section 6—208.1 of this Code.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c).) Defendant reasons that because the arresting officer did not correctly inform him of the consequences of refusal as spelled out in section 6—208.1 of the Code, the warning did not comply with the above-quoted statutory command.

We agree with defendant to the extent that we hold that, under the facts of the case, defendant made a *prima facie* case for rescission of the summary suspension. We believe that the warning in issue, by materially misstating the consequences of a refusal to submit to the requested test, did not comply with the requirements of section 11—501.1(c) of the Code. We thus conclude that the trial court erred in entering a directed finding for the State.

We note that defendant has not included a transcript of the hearing itself in the record on appeal. However, there are transcripts of the arguments on both the motion for a directed finding on the issue now raised on appeal and the motion for reconsideration. It is evident, and the State does not contest, that the trial judge granted the directed finding on this issue because she concluded that, as a matter of law, the warning issued in this case sufficiently complied with the Code.

In considering the State's motion for a directed finding, the trial judge was required to consider first whether defendant had made a *prima facie* case; only after finding that he had done so would she

have been required to weigh his evidence in order to decide whether the *prima facie* case had been negated. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55.) Even on this limited record it is clear that the trial judge concluded that because the warning was adequate defendant had not made a *prima facie* case that he was not properly advised of the consequences of refusal to submit to a test (see Ill. Rev. Stat. 1989, ch. 95½, par. 2—118.1(b)(3)).

■ Section 11—501.1(c) formerly provided that a defendant whose driver's license was suspended because he refused to submit to a chemical test could not obtain rescission of the suspension on the ground that he had not been warned that his driving privileges would be suspended if he refused to be tested. (See Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(c); *People v. Mucha* (1986), 140 Ill. App. 3d 788, 794-95.) As it now reads, however, section 11—501.1 of the Code requires the arresting officer to warn the motorist that refusal will result in the suspension of his driving privileges, and section 2—118.1(b)(4) of the Code makes the failure to give this warning a ground for the rescission of the suspension.

Whether the inaccurate warning given defendant complied with the relevant sections of the Code depends on the proper interpretation of the warning requirement. In construing the relevant statutory provisions, we must ascertain and give effect to the intent of the legislature. (*Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 104.) This requires us to consider not only the language of the statute but also the purposes to be attained by the provisions involved. *Canteen Corp.*, 123 Ill. 2d at 104.

■ Due process does not require that a motorist be allowed to refuse to take a chemical test that has otherwise validly been requested pursuant to the implied consent statute. (*People v. Yant* (1991), 210 Ill. App. 3d 961, 964; *People v. Frazier* (1984), 123 Ill. App. 3d 563, 566.) The statute is intended to allow a motorist to refuse such a test if he is willing to bear the consequences. (*Frazier*, 123 Ill. App. 3d at 566-67.) The purpose of requiring that the motorist be warned of the consequences of his refusal is to enable him to make an informed choice between refusing and submitting to the test. *People v. Znaniecki* (1989), 181 Ill. App. 3d 389, 392.

We do not believe that we would effectuate this legislative intent by holding that the warning in this case was sufficient. Here defendant was warned that refusal to take the test *or* submission to the test followed by a result of .10% or more blood-alcohol content would result in the suspension of his driving privileges for "at least 12 months." The warning, based on the statute as formerly written, thus

did not convey that under the statute as actually in effect the minimum suspension for a refusal to be tested is really 24 months, or twice that for taking and failing the requested test. The Code provides that after the statutorily imposed suspension has expired, "full driving privileges shall be restored unless the person is otherwise disqualified by this Code." (Ill. Rev. Stat. 1989, ch. 95½, par. 6—208.1(b).) Thus, the "minimum period" is not discretionary and may well be the actual period of suspension in a given case. By equating the consequences of refusal and submission followed by unfavorable results, the warning in this case was inaccurate and misleading and therefore not conducive to an informed choice.

■ Our reading of the statute is bolstered by the specific language of section 11—501.1(c), which states that the motorist "*shall* be warned *** that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle *as provided in section 6—208.1 of this Code*." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.1(c).) The word "shall" ordinarily indicates a mandatory obligation. (*People v. Gerke* (1988), 123 Ill. 2d 85, 94.) The phrase "as provided in Section 6—208.1" would be superfluous had section 11—501.1(c) been intended to require merely some sort of general warning. Courts should avoid constructions that make certain words or phrases meaningless or superfluous. (*People v. Fierer* (1988), 124 Ill. 2d 176, 192.) At the very least, the inclusion of such language would appear to obligate arresting officers to avoid giving materially inaccurate or misleading warnings.

The failure to give the required warnings is a ground for the rescission of the statutory summary suspension. (*People v. Gafford* (1991), 218 Ill. App. 3d 492, 497; *Znaniecki*, 181 Ill. App. 3d at 392.) In *Znaniecki*, the appellate court reversed the circuit court's denial of defendant's petition to rescind his summary suspension. The court held that where the arresting officer warned the defendant only of the consequences of submitting to a test that revealed a blood-alcohol content of more than .10% and not of the consequences of refusing the test, the incomplete warning did not comply with section 11—501(c). The court explained that the purpose of the warning requirement is to allow a motorist to make an intelligent decision between being tested and refusing testing; therefore, the motorist must be "completely informed" of the consequences of either choice. 181 Ill. App. 3d at 392.

Although *Znaniecki* involved a complete failure to warn of the consequences of refusal to submit to a test, we believe that its reason-

ing is equally applicable to the failure to provide a substantially correct warning. To hold that an inaccurate or deceptive warning may satisfy the requirement of section 11—501(c) would disserve the purpose of the warning requirement and perhaps even make the requirement itself superfluous. We note that section 11—501.1(c) and section 2—118.1(b)(3), as construed in *Znaniecki*, do not make the defendant's actual state of mind at the time of the arrest a relevant consideration; the test is whether the defendant was issued a warning that was objectively accurate and informative. *Znaniecki*, 181 Ill. App. 3d at 392.

In *People v. McCollum* (1991), 210 Ill. App. 3d 11, the Appellate Court, Fourth District, relying in part on *Znaniecki*, held that section 11—501.1(c) requires the arresting officer to admonish the motorist of the specific length of a possible suspension. Without necessarily endorsing all of the reasoning of that opinion, we agree with *McCollum* to the extent that the failure to admonish the motorist properly of the length of a possible suspension may result in an incomplete warning and thus necessitate the rescission of the statutory suspension.

■ We hold that the evidence that defendant was given a materially inaccurate and misleading warning was sufficient to establish a *prima facie* case for the rescission of the statutory summary suspension. The trial court therefore erred in granting the State a directed finding at the close of defendant's evidence. Although defendant requests that we order the trial court to grant his petition to rescind the suspension, we cannot do so at this stage of the proceeding, as the State is entitled to put on evidence against the petition. We therefore reverse the trial court's grant of a directed finding on the petition insofar as it concerned the issue of compliance with the warning requirement. As defendant does not contest the grant of a directed finding on the other issues raised by his petition, the circuit court's ruling on those issues is affirmed. The cause is remanded for a new hearing on defendant's petition, limited to the issue of whether defendant was properly warned as required by sections 11—501(c) and 2—118.1(b)(3) of the Code.

The judgment of the circuit court is affirmed in part and reversed in part, and this cause is remanded.

Affirmed in part; reversed in part and remanded.

GEIGER and BOWMAN, JJ., concur.