THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEPHEN A. HUISINGA, Defendant-Appellant.

Fourth District No. 4—92—0676

Opinion filed March 11, 1993.

Kathryn Saltmarsh, of Metnick, Barewin, Wise & Cherry, of Springfield
(D. Peter Wise, of counsel), and James L. Ayers, of Ayers & Shonkwiler, of
Monticello, for appellant.

Roger Simpson, State's Attorney, of Monticello (Norbert J. Goetten,
Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Ap-
pellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Stephen A. Huisinga, was arrested for driving under
the influence of alcohol (DUI), pursuant to section 11—501(a)(2) of the

Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)(2)). His driving privileges were summarily suspended because he refused to submit to the chemical tests required by section 11—501.1 of the Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1). After a hearing on his petition to rescind the suspension of his driving privileges, the circuit court of Piatt County entered an order denying rescission. Defendant appeals, arguing the arresting officer did not explicitly request him to take the test, and consequently, there could be no clear refusal upon which the statutory summary suspension could be predicated. We affirm.

The underlying facts of the case are not in dispute. On April 25, 1992, Deputy J.D. Russell of the Piatt County sheriff's department stopped defendant's vehicle on Route 150 for speeding. Upon approaching defendant's vehicle, Russell smelled an odor of alcohol emanating from inside the car. Russell observed defendant's eyes were glassy, watery and bloodshot. After asking defendant how fast he had been going, defendant began to argue with the deputy about whether he had been speeding, and Russell noticed an odor of alcohol on defendant's breath and that his speech seemed to be "thick-tongued" and slower than normal speech. Russell then requested defendant perform various field-sobriety tests, which he later explained defendant failed. After completing the field-sobriety tests, defendant was asked to submit to a portable breathalyzer test. Defendant refused to take the test, and Russell then placed defendant under arrest for DUI.

Defendant was placed in the squad car and was admonished concerning the implied consent warnings for the administration of the breath or blood-alcohol tests. Russell testified he told defendant he would be offered the breathalyzer test at the county jail, but then asserted he believed what he actually told defendant was the test being offered at the Piatt County jail was the breathalyzer test. Russell then asked defendant if he understood the warnings. Defendant refused to respond at first, but later stated he understood the warning and the consequences of refusing to take the tests. At that time, he stated he refused to take the test and asserted he could not be drunk because he was trying to keep to one beer an hour. After his initial refusal to take the test, defendant was transported to the county jail and at no other time was he asked to take the test nor was it offered to him.

After his arrest, defendant was served notice from the Secretary of State's office he would receive a statutory summary suspension of his driver's license for two years for refusing to take the required tests. (See Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(f).) Defendant

thereafter petitioned the court to rescind his statutory summary suspension. After hearing, the circuit court denied his petition, and this appeal followed.

Relying on *People v. Brennan* (1984), 122 Ill. App. 3d 602, 603, 461 N.E.2d 1067, 1068, defendant argues on appeal he was never explicitly asked to take a breathalyzer test and therefore there could be no refusal upon which to base the statutory summary suspension, since there was neither a proper request nor an opportunity to take the test. The trial court, therefore, erred in failing to rescind his statutory summary suspension.

Conversely, the State contends the trial court did not err in finding defendant had refused to take the test. The State reasons defendant had been placed under arrest and was informed of the consequences of his refusal to take the required tests. He then unequivocally refused to take the tests. While it concedes the deputy's statement defendant would be offered the breathalyzer test at the jail was not in interrogative form, it contends defendant interpreted Russell's statement as a demand to take the test and proceeded to make an unequivocal refusal to take the test. Since Russell's statement conveyed to defendant a demand to take the test, defendant's response was a clear refusal to take the test. Citing *People v. Graziano* (1986), 151 Ill. App. 3d 475, 502 N.E.2d 822, it maintains once defendant stated his refusal to take the test, the officer was not required to give him a second chance to take the test. Accordingly, the State contends the trial court properly denied defendant's petition to rescind.

■ Section 11—501.1 of the Code sets forth the procedures which must be followed by law enforcement officials when requesting a driver submit to a chemical test and the penalties imposed upon a driver for refusing. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1.) Section 11.501.1(c) provides "that a refusal to submit to [a breathalyzer test] will result in the statutory summary suspension of such person's privilege to operate a motor vehicle." (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).) Section 2—118.1 of the Code sets forth the procedures through which a person whose license has been suspended, pursuant to section 11—501.1 of the Code, may have a hearing to determine whether the statutory summary suspension should be rescinded. (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1.) Section 2—118.1(b) of the Code requires such a person to "state the grounds upon which the person seeks to have the statutory summary suspension rescinded" when requesting such a hearing. (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b).) According to this section, there are four

areas of inquiries with respect to seeking rescission of a statutory summary suspension. One such area to which the scope of the rescission hearing is statutorily limited is whether the person, "after being advised by the arresting officer that the privilege to operate a motor vehicle would be suspended if the person refused to submit to and complete the test or tests, did refuse to submit." (Ill. Rev. Stat. 1991, ch. 95½, par. 2—118.1(b)(3).) This was one of the reasons advanced by defendant as a ground for the rescission of his suspension.

■ In a statutory summary suspension hearing, the burden of proof is on the motorist to present a *prima facie* case for rescission (*People v. Orth* (1988), 124 Ill. 2d 326, 338, 530 N.E.2d 210, 215), and in order for the motorist to prevail, the trial court must find defendant had satisfied his or her burden of proof by a preponderance of the evidence (*People v. Hawkins* (1991), 221 Ill. App. 3d 460, 463, 582 N.E.2d 243, 246; *People v. Gafford* (1991), 218 Ill. App. 3d 492, 497, 578 N.E.2d 583, 586). Whether a defendant has met this burden of proof is a question of fact for the trial judge, and this determination cannot be overturned on review unless it is against the manifest weight of the evidence; that is, unless an opposite conclusion is clearly evident from the record. *Hawkins*, 221 Ill. App. 3d at 463, 582 N.E.2d at 246; *People v. Bulman* (1991), 212 Ill. App. 3d 795, 801, 571 N.E.2d 850, 855; *People v. Misch* (1991), 213 Ill. App. 3d 939, 941, 572 N.E.2d 466, 467.

As case law suggests, the fact of a refusal must be based upon an objective review of the officer's question and defendant's response, and there cannot be a refusal to take a test unless the driver is asked to take the test. (*Brennan*, 122 Ill. App. 3d at 603, 461 N.E.2d at 1068.) A defendant is considered to have refused to submit to a breathalyzer test "where, after a clear warning of the ramifications resulting from a refusal [citation], an officer explicitly asks a defendant whether he, or she, will take the test, and the defendant, by word, act or omission, clearly refuses to take the test." *Brennan*, 122 Ill. App. 3d at 603, 461 N.E.2d at 1068; see also *People v. Kern* (1989), 182 Ill. App. 3d 414, 416, 538 N.E.2d 184, 186.

■ While defendant was not explicitly asked in interrogative form to take the breathalyzer test, we find the trial court's conclusion defendant refused to take the test was not against the manifest weight of the evidence. As the facts illustrate, defendant was offered and refused to take the portable breathalyzer test. He was then admonished regarding the failure to submit to the breath or blood-alcohol tests. Defendant was asked if he understood the warnings, and he stated he did. He then affirmatively interjected his refusal to take the

test and offered an explanation for his refusal. Given this sequence of events, the trial court could appropriately find the defendant refused to take the breathalyzer test. We reject any suggestion he would have taken the test if thereafter asked to do so. Accordingly, the trial court's ruling was not against the manifest weight of the evidence. To reverse the trial court's ruling would eviscerate the purposes and meaning of the implied-consent statute—to assist in the determination of whether motor vehicle drivers suspected of intoxication are in fact under the influence of alcohol and to make the streets and highways of the State safer for its citizens by making prosecution of intoxicated drivers easier and by suspending drivers' licenses upon refusal to submit to an intoxication test (*People v. Carlyle* (1985), 130 Ill. App. 3d 205, 210, 474 N.E.2d 9, 12)—and section 11—501.1 is instead to be liberally construed to accomplish its purpose of protecting the citizens of Illinois upon its highways (*People v. Ellerbusch* (1983), 118 Ill. App. 3d 500, 503, 454 N.E.2d 1166, 1168).

By affirming the trial court's ruling in this instance, we do not condone the failure of police officers to ask a defendant in specific question form to submit to the chemical tests. Unless a defendant is completely uncooperative, an officer should explicitly ask a defendant to take the required test before he concludes a defendant has refused. The failure of officers to strictly adhere to the implied-consent statute also eviscerates the purpose of the statute and encourages litigation with the possibility a trial court or a reviewing court might disagree with an officer's inference defendant refused. Cases based solely on the failure of officers to ask defendants to submit to a breathalyzer test are a complete waste of judicial resources. Courts should not have to be making such determinations when the whole situation could be avoided by an officer simply asking the defendant a single question. In this case, however, the facts are as such to allow us to easily conclude defendant clearly refused to take the test.

The judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and GREEN, J., concur.