THE CITY OF HIGHLAND PARK, Plaintiff-Appellee, v. YEVGENIY DI-
DENKO, Defendant-Appellant.

Second District   No. 2—94—1354

Opinion filed August 4, 1995.

INGLIS, J., dissenting.

J.D. Obenberger, of Chicago, for appellant.

Suzanne A. Lindsay and Charles W. Smith, both of Rosing, Smith, Erick-
sen, Zeit & Stanczak, Ltd., of Waukegan, for appellee City of Highland Park.

JUSTICE COLWELL delivered the opinion of the court:

Defendant, Yevgeniy Didenko, appeals the trial court's order
denying his petition to rescind the summary suspension of his driver's
license (see 625 ILCS 5/2—118.1(b) (West 1994)). The question for
review is whether the trial court erred in ruling that the arresting
officer's failure to give the required warning about refusal to submit
to breath testing was excused by defendant's combativeness. We re-
verse.

Because there is no bystander's report or transcript of the
testimony from the summary suspension hearing, we derive the facts
from the trial court's findings set forth in a written order, the traffic
citation, and the facts as agreed upon by trial counsel. Defendant
was driving 81 miles per hour in a 50-mile-per-hour zone. When the

police officer attempted to pull defendant over, defendant increased his speed to 108 miles per hour. Defendant was forced to stop when semi-tractor trailers barricaded his vehicle. Defendant refused to exit his vehicle and did not respond to the officer's requests. Instead, defendant wrapped his arms around the steering wheel. The officer had to turn off the ignition and remove the key. The officer also pried defendant's hands and arms from the steering wheel and physically removed him from the car. Defendant and the officers struggled, falling onto the trunk of the car. Defendant kicked at the officers. The arresting officer noticed a strong odor of alcohol on defendant's breath. He was handcuffed, physically placed in the back of the squad car, and taken to the police station. The officers read the *Miranda* rights to defendant, but he refused to listen and was loud and abusive.

On arrival at the station, defendant remained uncooperative and physically combative. His driver's license had to be forcibly taken from him. At some point, defendant stated that he refused to do anything without a Russian lawyer. Defendant's responses to any verbal requests were obscenities. He refused to answer questions and was physically aggressive. Because defendant was "extremely combative," for the personal safety of the police officers, defendant was placed in a holding cell. Although the arresting officer attempted to read the *Miranda* warnings again to defendant, he decided that it was futile to attempt to read the "Warning to Motorist" to defendant. The officer wrote on the "Warning to Motorist" form that the warning was "not given as subject was placed into lockup, combative," and the printed phrase "Time of Warning" was crossed out.

The court found that every effort the officer made to comply with the statute was "completely thwarted" by defendant's refusal to cooperate and his physical aggression; that defendant's actions interfered with the officer's efforts to provide the warnings about refusal to submit to testing and to request that defendant submit; and that reading the "Warning to Motorist" to defendant would have been futile because defendant "made every effort to prevent the officer from arresting and processing" him. The court concluded that defendant's conduct was a constructive refusal and, therefore, the officer did not need to provide the warning or request defendant to submit to testing.

In a summary suspension rescission proceeding, the motorist has the burden of proving one or more of the statutory grounds for rescission. (*People v. Orth* (1988), 124 Ill. 2d 326, 338.) We will not reverse the trial court's decision unless it is against the manifest weight of the evidence. *People v. Graney* (1992), 234 Ill. App. 3d 497, 503.

Any person who drives on a public highway and is arrested for

driving under the influence of alcohol is deemed to have given implied consent to a test to determine whether he or she is under the influence of alcohol. (625 ILCS 5/11—501.1(a) (West 1994).) Before administering the test, the arresting officer is required to warn the motorist that refusal to take the test or failure to pass the test will result in the suspension of driving privileges. (625 ILCS 5/11—501.1(c) (West 1994).) The officer's failure to give the required warnings is a ground for the rescission of the suspension. *People v. Engelbrecht* (1992), 225 Ill. App. 3d 550, 556.

The trial court relied on *People v. Aultman* (1992), 237 Ill. App. 3d 304, when it concluded that it would have been futile for the officer to have read the "Warning to Motorist." However, *Aultman* is distinguishable because in that case the officer twice attempted to read the warning over the defendant's screaming. (*Aultman*, 237 Ill. App. 3d at 306.) By contrast, here the officer never attempted to read the warning. Although defendant was combative, he was in a holding cell, where he could not harm the officer. As such, defendant's combativeness did not prevent the officer from attempting to read the warning. As the court in *Aultman* explained, "[i]n all but the most egregious circumstances, an arresting officer should provide the statutory warnings." (*Aultman*, 237 Ill. App. 3d at 309.) Exceptions to the statute should not be engrafted lightly. *Aultman*, 237 Ill. App. 3d at 309.

The futility of reading the warning does not excuse the officer's duty to attempt to do so. (See *People v. Wegielnik* (1992), 152 Ill. 2d 418, 424 (the officer must read the warning even if the suspect would not understand it).) If the person is conscious and present, the officer must make an effort to read the warning. (*Cf. People v. Doty* (1987), 164 Ill. App. 3d 53, 57 (defendant's fleeing from the scene before officer had opportunity to read warning constituted constructive refusal).) While it is likely that defendant would have refused to cooperate even had the officer read the warning, we believe the officer has the obligation to do so and may not ignore the statutory requirement based on that officer's subjective determination that a suspect will refuse to cooperate. The purpose of the warning is to "motivate[ ] drivers to take the test, thereby allowing the State to obtain objective evidence of intoxication." (*Wegielnik*, 152 Ill. 2d at 425.) Consequently, it is in the State's interest to provide the warning. The suspect might decide to cooperate when threatened with the loss of his or her license.

In light of the statutory purpose, we conclude that an officer cannot make the subjective determination that a suspect is too uncooperative to even attempt to provide the warning. To allow the

officer to make this determination would encourage litigation, and the court might disagree with the officer's inference that the suspect refused. (*People v. Huisinga* (1993), 242 Ill. App. 3d 418, 422.) As the court in *Huisinga* noted:

> "Cases based solely on the failure of officers to ask defendants to submit to a breathalyzer test are a complete waste of judicial resources. Courts should not have to be making such determinations when the whole situation could be avoided by an officer simply asking the defendant a single question." *Huisinga*, 242 Ill. App. 3d at 422.

We conclude that the trial court's finding that defendant constructively refused to take the test was against the manifest weight of the evidence because defendant was never given the warning or asked to submit to testing. We are not condoning defendant's actions. Had the officer attempted to warn defendant of the consequences of refusal, we would have upheld the trial court's finding of a constructive refusal. What we cannot sanction is the officer making the subjective determination that compliance with the statutory mandate would be futile. We therefore reverse the order of the circuit court.

The order of the circuit court is reversed.

Reversed.

RATHJE, J., concurs.

JUSTICE INGLIS, dissenting:

I respectfully dissent. I agree with the trial court that defendant's combativeness and abusive behavior excused the arresting officer's failure to read the warning to motorist.

The majority seeks to distinguish *Aultman* on the basis that in that case the officer twice attempted to read the warning over the defendant's screaming. (*Aultman*, 237 Ill. App. 3d at 306.) As the majority notes, the court in *Aultman* urged that in all but the most egregious circumstances the officer should read the warnings. (*Aultman*, 237 Ill. App. 3d at 309.) I believe that the officer in the present case was confronted with just such egregious circumstances.

Defendant fought, cursed, yelled, and refused to cooperate in every instance. He drove at speeds in excess of 100 miles per hour to avoid arrest. He had to be forcibly relieved of his driver's license and his keys. He kicked the officers and had to be pried and dragged from his vehicle. He answered every inquiry with verbal attacks and yelled throughout the reading of his *Miranda* warnings. Even after he ar-

rived at the police station, defendant was violent and abusive and had to be restrained. Defendant never submitted to the officer's authority.

Although defendant was confined in a holding cell and could no longer physically interfere with his arrest, he retained the ability to yell and thereby audibly prevent the reading of the warning to motorist just as he had prevented the reading of his *Miranda* warnings. Under these circumstances, defendant, by his actions, waived the right to be read the warning to motorist.

For this reason, I would affirm the decision of the trial court.