758 N.E.2d 805 (2001)
197 Ill.2d 478
259 Ill.Dec. 397
The PEOPLE of the State of Illinois, Appellant,
v.
Michael J. JOHNSON, Appellee.
No. 90383.
Supreme Court of Illinois.
October 18, 2001.
*806 James E. Ryan, Attorney General, Springfield, Douglas P. Floski, State's Attorney, Oregon (Joel D. Bertocchi, Solicitor General, William L. Browers and Kendall R. Mills, Assistant Attorneys General, Chicago, Norbert J. Goetten, Martin P. Moltz and Gregory L. Slovacek, Office of the State's Attorneys Appellate Prosecutor, Elgin, of counsel), for the People.
No appearance for appellee.
Justice FITZGERALD delivered the opinion of the court:
On July 8, 1999, defendant, Michael Johnson, was arrested for driving under the influence of a drug in violation of section 11-501(a)(4) of the Illinois Vehicle Code. 625 ILCS 5/11-501(a)(4) (West 1998). Following his arrest, he was advised of his rights to take or refuse a chemical test which would detect alcohol or drugs in his bloodstream. The arresting officer read these rights from a preprinted form entitled "Warning to Motorist":
"1. If you refuse or fail to complete all chemical tests requested and:
If you are a first offender, your driving privileges will be suspended for a minimum of 6 months;
If you are not a first offender, your driving privileges will be suspended for a minimum of 2 years.

2. If you submit to a chemical test(s) disclosing an alcohol concentration of 0.08 or more or any amount of a drug, substance or compound resulting from the unlawful use or consumption of cannabis listed in the Cannabis Control Act *807 or a controlled substance listed in the Illinois Controlled Substances Act and:
If you are a first offender, your driving privileges will be suspended for a minimum of 3 months, or
If you are not a first offender, your driving privileges will be suspended for a minimum of one year." (Emphasis added.)
Defendant submitted to the chemical test and tested positive for the presence of drugs in his bloodstream. The Secretary of State, having determined that defendant was a first offender as defined under the statute (see 625 ILCS 5/11-500 (West 1998)), filed with the circuit court a confirmation of statutory suspension of defendant's driver's license for a period of three months pursuant to section 6-208.1(a)(2) of the Illinois Vehicle Code (625 ILCS 5/6-208.1(a)(2) (West 1998)).
Defendant then filed a petition to rescind his suspension, arguing that the warnings issued by the officer were erroneous and that this error merited rescission. Defendant asserted that he was advised non-first offenders were subject to a two-year suspension for refusal or failure to complete the chemical test, while the statute mandates a three-year suspension. 625 ILCS 5/6-208.1(a)(3) (West 1998).
The parties stipulated that the warning contained inaccurate information regarding non-first offenders, though the trial court observed that the error did not "materially affect" defendant because he was a first offender. The trial court, nonetheless, granted defendant's petition to rescind because "inaccurate or deceptive warnings" did not satisfy the mandatory warning requirement contained in the Illinois Vehicle Code. 625 ILCS 5/11-501.1(c) (West 1998).
The appellate court affirmed the rescission. 316 Ill.App.3d 43, 249 Ill.Dec. 262, 735 N.E.2d 1087. The State appealed pursuant to Supreme Court Rule 315, and we granted the State's petition for leave to appeal. 177 Ill.2d R. 315. We now reverse the appellate court and remand to the circuit court for further proceedings on the remaining issues raised in defendant's petition for rescission.

ANALYSIS
Before discussing the merits of this appeal, we note that defendant has not filed an appellee's brief. We decide this issue, however, without the aid of the appellee brief pursuant to First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill.2d 128, 133, 345 N.E.2d 493 (1976) (where the appellee files no brief "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal").
The single issue in this appeal is whether a suspension warning that does not comply with the suspension statute in force warrants rescission of suspension. Whether trial courts must rescind summary suspensions if motorists are not properly warned is a legal issue which we review de novo. See People v. Krueger, 175 Ill.2d 60, 64, 221 Ill.Dec. 409, 675 N.E.2d 604 (1996).
Section 11-501.1 of the Illinois Vehicle Code, commonly called the "implied-consent law," prohibits operation of a vehicle anywhere in the state by individuals under the influence of alcohol or drugs. 625 ILCS 5/11-501.1 (West 1998). It is called the implied-consent law because motorists are "deemed" to have given consent to chemical testing. 625 ILCS 5/11-501.1(a) (West 1998). Motorists are warned that refusal to submit to testing will result in a suspension of driving privileges that is more severe in duration than if the individual *808 takes the test and fails. 625 ILCS 5/11-501.1(c) (West 1998). According to section 11-501.1(c), the warning to motorists shall contain the suspension information provided in section 6-208.1 of the Illinois Vehicle Code. Section 11-501.1(c) states:
"A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory suspension of the person's privilege to operate a motor vehicle as provided in Section 6-208.1 of this Code. The person shall also be warned by the law enforcement officer that if the person submits to the test or tests provided in paragraph (a) of this Section and the alcohol concentration in the person's blood or breath is 0.08 or greater, or any amount of a drug, substance, or compound resulting from the unlawful use or consumption of cannabis as covered by the Cannabis Control Act, a controlled substance listed in the Illinois Controlled Substances Act, or an intoxicating compound listed in the Use of Intoxicating Compounds Act is detected in the person's blood or urine, a statutory summary suspension of the person's privilege to operate a motor vehicle, as provided in Sections 6-208.1 and 11-501.1 of this Code, will be imposed." (Emphases added.) 625 ILCS 5/11-501.1(c) (West 1998).
Section 6-208.1 classifies motorists into two categories for purposes of the suspension: (1) "first offenders" or "non-first offenders" as defined under the statute (see 625 ILCS 5/11-500 (West 1998)), and (2) motorists who submit to testing that discloses unlawful concentrations of alcohol and/or other intoxicating compounds listed in section 11-501.1 or, alternatively, motorists who refuse or fail to complete the requested testing. 625 ILCS 5/6-208.1(a) (West 1998). Under section 6-208.1, the following periods of suspension apply: (1) six months for refusal or failure to complete a test or tests to determine the unlawful presence of an alcohol, drug, or intoxicating compound concentration pursuant to section 11-501.1; (2) three months for persons who submit to the chemical test and that test discloses an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or intoxicating compound resulting from the unlawful use or consumption of cannabis, a controlled substance, or an intoxicating compound; (3) three years for non-first offenders who refuse or fail to complete a chemical test or tests; and (4) one year for non-first offenders who submit to the chemical test and that test discloses an alcohol concentration of 0.08 or more, or any amount of a drug, substance, or intoxicating compound resulting from the unlawful use or consumption of cannabis, a controlled substance, or an intoxicating compound. 625 ILCS 5/6-208.1(a) (West 1998).
In the instant matter, defendant, a first offender, was misinformed about the period of suspension for non-first offenders who refuse the chemical testing. The appellate court affirmed rescission of defendant's suspension on the basis that he was not warned as provided in section 6-208.1. 316 Ill.App.3d at 51, 249 Ill.Dec. 262, 735 N.E.2d 1087. According to the appellate court, the implied-consent statute imposes a mandatory obligation to provide warnings consistent with section 6-208.1, and failure to provide warnings consistent with section 6-208.1 requires rescission of the suspension. 316 Ill.App.3d at 50-51, 249 Ill.Dec. 262, 735 N.E.2d 1087.
The appellate court concluded that suspension warnings are provided so that motorists may make an "informed choice" *809 about the consequences of refusing or submitting to the chemical tests. 316 Ill. App.3d at 51, 249 Ill.Dec. 262, 735 N.E.2d 1087. Inaccurate or erroneous warnings mislead motorists and deny them the opportunity to make that "informed choice." 316 Ill.App.3d at 50-51, 249 Ill.Dec. 262, 735 N.E.2d 1087. According to the appellate court, section 6-208.1 provides a bright-line test: Was the motorist "issued a warning that was objectively accurate and informative?" 316 Ill.App.3d at 49, 249 Ill.Dec. 262, 735 N.E.2d 1087, citing People v. Engelbrecht, 225 Ill.App.3d 550, 557, 167 Ill.Dec. 811, 588 N.E.2d 452 (1992). Under this test, trial courts must only determine whether the warning complied with section 6-208.1.
As an initial matter, we observe that the appellate court recognized a conflict regarding the effect of inaccurate or erroneous warnings. Some appellate panels have held that warnings which contain any misinformation are a sufficient basis to rescind suspension. Engelbrecht, 225 Ill. App.3d at 556, 167 Ill.Dec. 811, 588 N.E.2d 452; People v. Estrada, 313 Ill.App.3d 245, 248, 246 Ill.Dec. 200, 729 N.E.2d 851 (2000). Conversely, other panels of the appellate court have held that the inaccurate warning must "prejudice" or "materially affect" the motorist before rescission can be granted. People v. Diestelhorst, 253 Ill.App.3d 867, 875-76, 193 Ill.Dec. 24, 625 N.E.2d 1145 (1993); People v. McCollum, 210 Ill.App.3d 11, 154 Ill.Dec. 493, 568 N.E.2d 493 (1991); People v. Monckton, 191 Ill.App.3d 106, 138 Ill.Dec. 506, 547 N.E.2d 673 (1989); People v. Znaniecki, 181 Ill.App.3d 389, 130 Ill.Dec. 195, 537 N.E.2d 16 (1989). According to these courts, a defendant is "prejudiced" or "materially affected" if the inaccurate warning created the false impression that a choice would result in less suspension, no suspension, or a judicial driving permit rather than complete suspension. See, e.g., Diestelhorst, 253 Ill.App.3d at 875, 193 Ill.Dec. 24, 625 N.E.2d 1145.
The State contends this latter approach is more appropriate. This approach involves a two-part inquiry: (1) whether the motorist received a warning that does not comply with section 6-208.1, and (2) whether the inaccurate warning caused "prejudice" or "materially affected" the motorist. According to the State, rescission is only appropriate if a motorist can satisfy both prongs.
Relying upon Engelbrecht, 225 Ill. App.3d 550, 167 Ill.Dec. 811, 588 N.E.2d 452, the appellate court rejected this approach. The appellate court noted that a motorist's intent or subjective understanding is immaterial under the statute. See 316 Ill.App.3d at 50, 249 Ill.Dec. 262, 735 N.E.2d 1087, citing People v. Wegielnik, 152 Ill.2d 418, 427, 178 Ill.Dec. 693, 605 N.E.2d 487 (1992). See also Wegielnik, 152 Ill.2d at 424, 178 Ill.Dec. 693, 605 N.E.2d 487 ("The statute does not require that a motorist understand the consequences"). Therefore, the second inquiry, whether the inaccurate warning caused "prejudice" or "materially affected" the motorist, leads to inappropriate and "needless litigation regarding the intent and subjective understanding of the defendant." 316 Ill.App.3d at 50-51, 249 Ill. Dec. 262, 735 N.E.2d 1087.
Under either approach, appellate panels have stated that the purpose of the warnings is to enable the motorist to make an "informed choice." Engelbrecht, 225 Ill. App.3d at 555, 167 Ill.Dec. 811, 588 N.E.2d 452 ("The purpose of requiring that the motorist be warned of the consequences of his refusal is to enable him to make an informed choice"); Estrada, 313 Ill.App.3d at 248, 246 Ill.Dec. 200, 729 N.E.2d 851 ("The purpose of a warning to motorist is to allow the motorist to make an intelligent *810 decision between being tested and refusing testing"); Diestelhorst, 253 Ill.App.3d at 870, 193 Ill.Dec. 24, 625 N.E.2d 1145 ("An inadequate warning * * * precludes the motorist from making an informed decision"); Monckton, 191 Ill.App.3d at 109, 138 Ill.Dec. 506, 547 N.E.2d 673 ("Admission of the result [defendant's breath-alcohol content] * * * would defeat the legislature's objective of allowing a defendant to make a knowing and voluntary decision regarding the test"); Znaniecki, 181 Ill. App.3d at 392, 130 Ill.Dec. 195, 537 N.E.2d 16 ("The absence of this warning of the resulting consequences did not permit or allow the defendant to make an intelligent, knowing, and informed decision in this cause").
Pursuant to our opinion in Wegielnik, which directly addressed the implied-consent statute and the purpose of its warnings, we conclude that our appellate court has misconstrued the purpose of the warnings. Thus, we decline to adopt either test used by our appellate court and, instead, base our holding upon the principles set forth by this court in Wegielnik.
In Wegielnik, the defendant, a permanent resident of the United States, was arrested for driving under the influence of alcohol and advised of his right to take or refuse a Breathalyzer test. He was advised by the officer that if he did not submit to the test he would lose his driver's license for a period of six months. On appeal to this court, he argued that the State was required to rescind his license suspension because his insufficient English language skills prevented him from understanding or comprehending the warnings. The defendant did not read or write English and spoke "just a little." Wegielnik, 152 Ill.2d at 422, 178 Ill.Dec. 693, 605 N.E.2d 487. The defendant maintained that motorists have a right to receive warnings in a language they comprehend so that they may understand the consequences of their decision to take or refuse the test.
We first looked to the statutory language, noting that the statute requires arresting officer to "warn" motorists. Wegielnik, 152 Ill.2d at 423-24, 178 Ill.Dec. 693, 605 N.E.2d 487. We rejected the defendant's assertion, however, that the word "warn" implied "subjective understanding [of the consequences] on the part of the person so advised." Wegielnik, 152 Ill.2d at 424, 178 Ill.Dec. 693, 605 N.E.2d 487. Rather, we held that the statute requires only that "warnings be given * * *. [It] does not require that a motorist understand the consequences * * *." Wegielnik, 152 Ill.2d at 424, 178 Ill.Dec. 693, 605 N.E.2d 487. We discussed the overall goal and scheme of the implied-consent statute to support our holding. Wegielnik, 152 Ill.2d at 425, 178 Ill.Dec. 693, 605 N.E.2d 487. We recognized that the implied-consent statute was enacted as a matter of public policy to make highways safer. Wegielnik, 152 Ill.2d at 425, 178 Ill.Dec. 693, 605 N.E.2d 487. Therefore, the remedial nature of the statute warranted liberal construction to accomplish its overall goal of safety. Wegielnik, 152 Ill.2d at 425, 178 Ill.Dec. 693, 605 N.E.2d 487.
Importantly, in Wegielnik we discussed the purpose of the warnings. Contrary to the "informed choice" purpose stated by our appellate court, in Wegielnik this court stated:
"[W]e do not believe the purpose of the implied-consent statute is to advise drivers as to whether they should take a blood-alcohol test, or to give them a choice between a six- and three-month suspension. * * *
The implied-consent statute serves the legislative purpose of promoting highway safety by assisting in the determination *811 of whether drivers suspected of intoxication are in fact under the influence of alcohol. [Citation.] The threat of summary suspension for refusing to take a blood-alcohol test motivates drivers to take the test, thereby allowing the State to obtain objective evidence of intoxication. [Citation.] For this reason it is in the State's best interest for law enforcement officials to fully explain the consequences of refusal. [Citation.]" (Emphasis added.) Wegielnik 152 Ill.2d at 425, 178 Ill.Dec. 693, 605 N.E.2d 487.
Our reading of Wegielnik reveals that warnings required by the implied-consent statute are not meant to enable an "informed choice." In fact, the warnings benefit the State, not the motorists. Specifically, warnings are an evidence-gathering tool for the State. The threat of an extended suspension for motorists who refuse the test motivates individuals to take the test so that the State may gain objective evidence of intoxication. Wegielnik, 152 Ill.2d at 425-26, 178 Ill.Dec. 693, 605 N.E.2d 487. This evidence helps the State achieve the overall goal of the statuteto help prosecute and remove "problem drivers" from the highways. Wegielnik, 152 Ill.2d at 425-26, 178 Ill.Dec. 693, 605 N.E.2d 487. We note, moreover, that this court in People v. Fisher, 184 Ill.2d 441, 451-52, 235 Ill.Dec. 454, 705 N.E.2d 67 (1998), recently affirmed the principles set forth in Wegielnik. Although Fisher involved an equal protection and due process challenge to a different section of the Act, we generally observed that the suspension provisions exist to motivate submission to testing and, thereby, promote the overall remedial purpose of the Act. Fisher, 184 Ill.2d at 452, 235 Ill.Dec. 454, 705 N.E.2d 67. Fisher, therefore, affirms that the giving of warnings serves as a tool to achieve the Act's ultimate goal of highway safety. Therefore, we reject the appellate court's finding that the "test to be applied is whether the motorist was given a warning that was objectively accurate and informative to the motorist so that she or he could make an informed choice." 316 Ill. App.3d at 51, 249 Ill.Dec. 262, 735 N.E.2d 1087.
Our holding in Wegielnik that motorists need not "understand" the warning does not mean that law enforcement officers may misinform motorists, some of whom may understand the inaccurate warning and rely upon it. The latter proposition would allow law enforcement officers to freely deceive motorists with misinformation. Clearly, principles of fairness deny this result. More importantly, however, the plain language of the statute balanced with its remedial nature does not compel this result.
The plain language of section 11-501.1(c) requires officers to give the warnings contained in section 6-208.1. Section 11-501.1(c) states that motorists "shall be warned." 625 ILCS 5/11-501.1(c) (West 1998). The word "shall" makes the obligation to warn"as provided in Section 6-208.1" (625 ILCS 5/11-501.1(c) (West 1998))mandatory. See Citizens Organizing Project v. Department of Natural Resources, 189 Ill.2d 593, 598, 244 Ill.Dec. 896, 727 N.E.2d 195 (2000); People v. Reed, 177 Ill.2d 389, 393, 226 Ill.Dec. 801, 686 N.E.2d 584 (1997). Therefore, as a general rule, the warnings given to motorists should be consistent with the information provided in section 6-208.1. We must also consider, however, that the implied consent statute is remedial in nature and, therefore, "should be liberally construed" to preserve its overall purpose. Wegielnik, 152 Ill.2d at 425, 178 Ill.Dec. 693, 605 N.E.2d 487. Accordingly, we conclude that rescission is warranted based on the receipt of erroneous or inaccurate warnings only if that misinformation directly *812 affects the motorist's potential length of suspension. If the motorist was misinformed as to the potential suspension of an individual in his or her situation, he was not properly warned as provided in section 6-208.1. To hold that any misinformationeven misinformation which does not concern the motoristwarrants rescission defeats the purpose of the statute. Thus, in reviewing a petition for rescission based on inaccurate warnings, courts must determine merely whether the motorist is a member of the group affected by the inaccuracy.
In the instant case, the record is clear. The trial court's rescission order contains express findings that defendant was a first offender, but that the warning which failed to comply with section 6-208.1 concerned non-first offenders. The misinformation did not directly affect defendant's potential length of suspension. Therefore, rescission of his summary suspension is not warranted.

CONCLUSION
For the foregoing reasons, we reverse the judgments of the appellate and circuit courts, and remand to the circuit court for hearing on the remaining issues in defendant's petition for rescission.
Judgments reversed; cause remanded.
Justice THOMAS took no part in the consideration or decision of this case.
Chief Justice HARRISON, specially concurring:
I agree with the result reached by my colleagues. I write separately because I do not share the majority's view regarding the purpose of the warnings required by the implied-consent statute. My colleagues advance the notion that the warnings have nothing to do with enabling detained motorists to make an informed choice about submitting to police testing, but are instead part of a scheme to help the State extract incriminating evidence of intoxication. In other words, they construe the warnings not as a normal admonition of the sort typically given to criminal defendants, but as a threat, a form of coercion: "let us take your blood or else."
I see things differently. In my view, the warnings required by the implied-consent statute must be understood as part of the legacy of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its recognition of the need for safeguards to secure the privilege against self-incrimination. Miranda is the paradigm through which all admonitions from the police are now viewed by our citizenry. In the wake of Miranda, people understand that they have choices about what they say and do when detained by the police and they understand that the police must put them on notice of those choices. Legislators and judges must therefore assume that when motorists receive warnings from the police of the type required by the implied-consent statute, they will interpret those warnings as affording them meaningful protection and meaningful options.
That the statutory warnings in the implied-consent law were intended to enable motorists to make informed decisions regarding whether they should assent to testing by the police is something that our appellate court has consistently recognized. See People v. Estrada, 313 Ill. App.3d 245, 248, 246 Ill.Dec. 200, 729 N.E.2d 851 (2000); People v. Diestelhorst, 253 Ill.App.3d 867, 870, 193 Ill.Dec. 24, 625 N.E.2d 1145 (1993); People v. Engelbrecht, 225 Ill.App.3d 550, 555, 167 Ill.Dec. 811, 588 N.E.2d 452 (1992); People v. Znaniecki, 181 Ill.App.3d 389, 392, 130 Ill.Dec. 195, 537 N.E.2d 16 (1989). The adequacy of the warnings, however, does depend on whether the particular defendant involved *813 in the case actually understood them. As long as the defendant can comprehend that he is being asked to take a test (see People v. Wegielnik, 152 Ill.2d 418, 432, 178 Ill. Dec. 693, 605 N.E.2d 487 (1992)) and as long as the pretest warnings are objectively accurate and informative (see Engelbrecht, 225 Ill.App.3d at 557, 167 Ill.Dec. 811, 588 N.E.2d 452), the warnings will suffice.
The inquiry is an objective one. The defendant's actual state of mind is not a relevant consideration. The situation must be assessed, instead, from the point of view of a reasonable motorist, conversant in English, and confronting the same circumstances faced by the defendant in the case before the court. If such a motorist would adequately understand the options available to him and the consequences of those actions, the actual defendant in the case cannot complain that the warnings were deficient because he, personally, did not understand them.
Similarly, the actual defendant in the case cannot assail the warnings because they were defective in some way that had no bearing on the facts before the court. The inaccuracies must have been such that they would have misled a reasonable person regarding his options or the consequences of those options under the circumstances presented by the case. In other words, the inaccuracies, viewed objectively, must have been prejudicial. See 316 Ill. App.3d at 52, 249 Ill.Dec. 262, 735 N.E.2d 1087 (Thomas, J., dissenting).
The inaccuracies here were not prejudicial. They would not have affected the decisionmaking of a reasonable person facing the circumstances confronted by defendant because they had nothing whatever to do with defendant's situation. As the majority correctly notes, the problem cited by the defendant concerned motorists who were not first offenders. Defendant, himself, however was a first-time offender. That part of the warning was therefore irrelevant. Accordingly, I agree that recision of defendant's suspension was not warranted, that the judgments of the appellate and circuit courts should be reversed and that the matter should be remanded to the circuit court for further proceedings.